1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

CESAR A. CALDERON SERRA, et al.,

    Plaintiffs,

      v.

BANCO SANTANDER PUERTO RICO, et al.,

    Defendants.

Civil No. 10-1906 (GAG)

## OPINION AND ORDER

Cesar Calderon Serra, his wife Teresita Palerm Nevares and their conjugal partnership (collectively "Plaintiffs") bring this action against Banco Santander Puerto Rico ("BSPR"), Jose Gonzalez ("Gonzalez"), Juan Moreno ("Moreno"), Maria Calero ("Calero"), Jose Alvarez ("Alvarez"), James Rodriguez ("Rodriguez"), Hector Calvo ("Calvo") and unnamed loan officers and insurance companies (collectively "Defendants"), seeking damages stemming from various BSPR loans that were used to purchase investments, which caused them significant financial losses. Plaintiffs assert this court has jurisdiction pursuant to 28 U.S.C. § 1331, as the claims arise out of federal law. Plaintiffs claim Defendants participated in a coordinated pattern of activity that violates 15 U.S.C. § 78g ("Regulation U") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (the "RICO Act"). (See Docket No. 1 at 8 & 10.)

Presently before the court are Defendants' motions to dismiss. Moreno, Alvarez and Calvo seek dismissal for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) (Docket No. 68). Plaintiffs opposed said motion (Docket No. 75) and Moreno, Alvarez and Calvo replied (Docket No. 84). BSPR filed a motion seeking dismissal of Plaintiffs' claims for failure to state a claim (Docket No. 48). Plaintiffs opposed the motion  (Docket No. 63) and BSPR filed a reply (Docket No. 67). Calero, Rodriguez, and Gonzalez  joined BSPR's motion and reply (Docket

**Civil No. 10-1906 (GAG)**                          2

Nos. 49, 69 & 70).  After reviewing these submissions and the pertinent law, the court **GRANTS**

all the motions at Docket Nos. 48, 49, 69, 70 and **GRANTS in part and DENIES in part** the

motion at Docket No. 68.

> ### I.      Standard of Review
>
> ### A.      Insufficient Service of Process

Rule 12(b)(5) allows a defendant to seek dismissal for a plaintiff's failure to sufficiently

serve the defendant with process.  FED.R.CIV.P. 12(b)(5).  The requirements for serving process on

an individual within a judicial district of the United States are delineated in Rule 4(e).  FED.R.CIV.P.

4(e).  This Rule allows a plaintiff to serve a defendant pursuant to the laws of the state in which the

defendant is located or pursuant to federal law.  See Fed.R.Civ.P. 4(e)(1 & 2).  A district court may

dismiss a complaint for a plaintiff's failure to effectively serve a defendant with process.  See Blair

v. City of Worcester, 522 F.3d 105, 110 (1st Cir. 2008).  Once the sufficiency of service of process

is challenged, the "plaintiffs have the burden of proving proper service."  Rivera-Lopez v.

Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992).

> ### B.      Failure to State a Claim Upon Which Relief Can Be Granted

"The general rules of pleading require a short and plain statement of the claim showing that

the pleader is entitled to relief."  Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st

Cir. 2009) (citations omitted) (internal quotation marks omitted).  "This short and plain statement

need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.'"  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to

state a claim upon which relief can be granted.  See FED. R. CIV. P. 12(b)(6).  To survive a Rule

12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is

plausible on its face."  Twombly, 550 U.S. at 570.  The court must decide whether the complaint

alleges enough facts to "raise a right to relief above the speculative level."  Id. at 555.  In so doing,

the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's

favor.  Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must

1

**Civil No. 10-1906 (GAG)**                    3

2   accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

3   Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements

4   of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly,

5   550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the

6   mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader

7   is entitled to relief.'" Iqbal, 556 U.S. 662, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

8           **II.     Factual and Procedural Background**

9           Plaintiffs have a custodial bank account with BSPR numbered 7CC-767545 (the "Account").

10  (See Docket No. 35 at ¶ 21.)   On or about January 25, 2008, BSPR informed Plaintiffs that

11  $9,000,000 would be available on loan for a 30 day Libor plus 0.95% for the purchase of securities

12  through BSPR's subsidiary, Santander Services.  (See Docket No. 35 at ¶ 56.)  Calderon signed a

13  series of blank loan applications, which were later filled in by bank personnel.  (See Docket No. 35

14  at 56.)  Plaintiffs claim that on January 25, 2008, Defendants traded $5,000,000 worth of securities

15  in their names.  (See id. at ¶ 20.)  On that date, prior to the transaction, Plaintiffs' account had a

16  balance of zero.  (See id.)  On January 31, 2008, BSPR issued a loan to Plaintiffs to cover the

17  January 25th transaction.  (See Docket No. 35 at ¶ 23.)  Plaintiffs claim they never deposited any of

18  their own money in the Account and that the sole source of money for the Account was on loan from

19  BSPR.  (See Docket No. 35 at ¶ 24.)  On February 21, 2008, Defendants traded another $1,000,000

20  from the Account in Plaintiffs name.  (See Docket No. 35 at ¶ 25.)  At the time of this transfer, the

21  Account was completely devoid of funds.  (See id. at ¶ 26.)  This process occurred four additional

22  times, without Plaintiffs ever depositing any of their own funds into the Account.  (See Docket No.

23  35 at ¶¶ 27-28.)

24          Plaintiffs argue this process violates 15 U.S.C. § 78g ("Regulation U") because Defendants

25  did not meet the minimum level of margin requirements.  (See Docket No. 35 at ¶¶ 30-32.)

26  Plaintiffs allege Defendants granted and distributed the loans with knowledge that such loans were

27  in violation of the applicable statues and regulations.  (See Docket No. 35 at ¶ 34.)  Plaintiffs allege

28

**Civil No. 10-1906 (GAG)**                4

Defendants committed such violations in order to increase their profits.  (See Docket No. 35 at ¶ 35.)

Plaintiffs claim they were never in control over the funds as the funds were sent directly to Santander Services.  (See Docket No. 35 at ¶ 52.)  Plaintiffs do not recall signing a pledge or other document securing the transactions, pursuant to banking industry custom.  (See Docket No. 35 at ¶ 57(d).)  At the time of the complaint, Plaintiffs were not in default on any payment to BSPR.  (See Docket No. 35 at ¶ 45.)   As of August 31, 2010, Plaintiffs suffered losses estimated to be $2,947,420.25 du to the decreased value of these securities.  (See Docket No. 35 at ¶ 55.)

The original complaint was filed on September 20, 2010.  (See Docket No. 1.)  The court granted leave to file an amended complaint on August 3, 2011.  (See Docket No. 26.)  Plaintiffs motioned to file a second amended complaint, which was granted by the court on November 1, 2011.  (See Docket No. 32.)  The second amended complaint was filed on November 2, 2011.  (See Docket No. 35.)

Summonses for Defendants were issued on November 7, 2011.  (See Docket No 37.)  On November 9, 2011, Plaintiffs requested an extension of time to serve Moreno.  (See Docket No. 39.)  The court granted the extension until January 30, 2012.  (See Docket No. 41.)  On November 22, 2011, Plaintiffs requested an extension of time to serve Gonzalez, Alvarez, Rodriguez and Calvo, which was granted that same day.  (See Docket Nos. 44 & 45.)  Plaintiffs sought service by publication for Moreno, Alvarez and Calvo on January 30, 2012.  (See Docket No. 55.)  Ths last motion was denied by the court for failure to include a first-hand affidavit as to the efforts used to locate said defendants.  (See Docket No. 56.)  The motion for service by publication was renewed on February 1, 2012 and included an affidavit by a private investigator who attempted to locate these defendants.  (See Docket No. 57.)  This renewed motion for service by publication was granted by the court.  (See Docket No. 58.)  Plaintiffs informed the court on March 7, 2012, that publication had occurred on February 9, 2012 and attached an affidavit of an employee of El Nuevo Dia attesting that such notice was published in said newspaper.  (See Docket No. 71.)  The court noted this informative motion on March 7, 2012.  (See Docket No. 72.)

**Civil No. 10-1906 (GAG)**                              5

### III.    Discussion

#### A.    Insufficient Service of Process

Rule 4(e) allows a plaintiff to "follow state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED.R.CIV.P. 4(e)(1). In Puerto Rico, a plaintiff may serve a defendant through publication if certain criteria are met. See P.R. Laws Ann. tit. 32, app. III. R. 4.5.[1] The court may issue such an order when the person to be served is outside of Puerto Rico and when the person cannot be located within Puerto Rico after good-faith attempts have been made to locate the defendant. See id. The plaintiff must provide the court with an affidavit stating the steps taken to locate the defendant in order to receive permission to serve by publication. See id. Once the court has granted service by publication, the plaintiff shall publish the summons one time in a newspaper of general circulation within Puerto Rico. See id. Within ten days of this publication, the plaintiff shall send a copy of the summons and the complaint, by certified mail with acknowledgment of receipt, to the defendant's last known address. See id. In the event the plaintiff is unable to ascertain a known address of the defendant, the plaintiff may avoid sending the summons and the complaint by submitting a sworn statement which states the steps taken to ascertain a previous address. See id.

In this case, Moreno, Alvarez and Calvo argue Plaintiffs complied with most terms of this rule, except for publishing the edict and sending these defendants a copy of the summons and the complaint. (See Docket No. 68 at ¶ 6.) Specifically, Defendants argue Plaintiffs had the duty to either send the summons and complaint to the last known address of Moreno, Alvarez and Calvo,

---

[1] The Puerto Rico Rules of Civil Procedure were amended in 2009. See P.R. Law Ann. tit. 32, app. V. Puerto Rico Rule of Civil Procedure 4.6 ("Rule 4.6") provides for service by publication. See P.R. Laws Ann. tit. 32, app. V. R. 4.6. However, as of the day of this opinion, there is no English translation for the 2009 Rules. The undersigned, being fully bilingual, notes the pertinent part of Rule 4.6 corresponds to Rule 4.5 of the 1979 Puerto Rico Rules of Civil Procedure. See P.R. Laws Ann. tit. 32, app. III, Rule 4.5. Accordingly, for purposes of this motion, the court will cite to the English translation of Rule 4.5. Notwithstanding, Defendants' shall on or before August 10, 2012 file a certified translation of Rule 4.6 for the record.

**Civil No. 10-1906 (GAG)**                                6

or submit a sworn statement to the court explaining the steps Plaintiffs took in order to ascertain the last known address of these defendants, even though that search was ultimately fruitless.  (See Docket No. 84 at 3.)  Plaintiffs claim they satisfied this portion of the rule by submitting the affidavit of Andre Amador ("Amador"), a private investigator hired by Plaintiffs to locate the pertinent defendants.  (See Docket No. 57-1.)

Before ruling on the motion, the court must first clarify that it is Plaintiffs' burden to prove it has complied with the rule.  See Rivera-Lopez, 979 F.2d at 887.  However, the supporting documents Plaintiffs provided to the court seeking leave to serve by publication may be sufficient to demonstrate Plaintiffs could not locate a last known address.  The rules do not require Plaintiffs to make a separate showing with separate documentation when opposing a motion to dismiss for ineffective service of process.  The affidavit Plaintiffs provided to the court seeking leave to serve by publication may be used by Plaintiffs to demonstrate they made a good-faith effort to locate the defendants, but it was "impossible to find any known address of the defendant."  P.R. Laws Ann. tit. 32, app. III, R. 4.5.

Turning to the affidavit itself, the court may quickly dispense with defendants Moreno and Calvo because the affidavit contains a last known address for these defendants.  The affidavit contains the address and the years of the "Former known address" for both Moreno and Calvo.  (See Docket No. 57-1 at 2.)  Therefore, Plaintiffs had the duty to send a copy of the summons and complaint to this address pursuant to Rule 4.6.  Plaintiffs failure to do so requires the court to **DISMISS** the claims against Moreno and Calvo.

In the case of Alvarez, the affidavit does not contain any known address despite the attempts of Amador.  (See Docket No. 57-1 at 2.)  The affidavit states Amador searched "worldwide person(s) location programs and criminal record check with local and federal law enforcement agencies, to include, U.S. Bankruptcy Court."  (See id. at 1.)  Amador cites the lack of personal information regarding Alvarez, as well as how common Alvarez's name, as reasons why his search was ultimately fruitless.  (See id. at 2.)

This affidavit satisfies Rule 4.6.  It states the steps taken by Plaintiffs to locate an address for

**Civil No. 10-1906 (GAG)**                    7

Alvarez and explains why Plaintiffs were ultimately unsuccessful.  Plaintiffs made a good-faith effort

to locate an address for Alvarez, but could not.  Therefore, Plaintiffs are excused from complying

Rule 4.6 as it pertains to sending a copy of the summons and complaint to Alvarez's last known

address.

Therefore, the court **GRANTS** the motion to dismiss as to Moreno and Calvo, but **DENIES**

the motion as to Alvarez.

### B.    Failure to State a Claim

#### 1.    Regulation U

Plaintiffs' first cause of action arises under Regulation U.  (See Docket No. 35 at 8.)

Defendants seek dismissal of this claim because Regulation U does not provide for a private right

of action.  (See Docket No. 48 at 6.)  Plaintiffs do not address Defendants' assertion, rather they

state, "no private action was started solely under this regulation" and "[t]he violation of Regulation

U should be entertained as bank fraud committed by Codefendants in order to further the RICO

scheme."  (See Docket No. 63 at 2 & 7.)  The First Circuit has not ruled on this issue, but other

circuits have and their analysis is highly persuasive.  See Useden v. Acker, 947 F.2d 1563, 1582

(11th Cir. 1991); Bennett v. U.S. Trust Co. of New York, 770 F.2d 308, 311-12 (2d Cir. 1985);

Bassler v. Cent. Nat. Bank in Chicago, 715 F.2d 308, 311-12 (3d 1983); Gilman v. Fed. Deposit Ins.

Corp., 660 F.2d 688, 692-93 (6th Cir. 1981).  In each of these cases, the circuit court relies upon Cort

v. Ash, 422 U.S. 66, 78 (1975), as controlling precedent to determine whether an implied right of

action exists within a statute.

The First Circuit also cites to Cort as controlling precedent when ruling on whether a statute

provides an implicit right of action.  See San Juan Cable LLC v. Puerto Rico Tel. Co. Inc., 612 F.3d

25, 32 (1st Cir. 2010).  As such, this court believes Cort is the proper precedent to use and the result

would not differ from that of the Second, Third, Sixth and Eleventh Circuits.  Therefore, the court

**GRANTS** Defendants' motion to dismiss Plaintiffs' claim arising under Regulation U.

#### 2.    RICO

Plaintiffs next claim a right of action under the RICO Act.  (See Docket No. 35 at 10.)

**Civil No. 10-1906 (GAG)**                                    8

Defendants seek dismissal of this claim by arguing the passage of the Private Securities Litigation Reform Act ("PSLRA") has preempted Plaintiffs' ability to sue under the RICO Act.  (See Docket No. 48 at 7.)  To date, this issue has not been ruled upon by the First Circuit.

In order to allege a civil RICO Act claim, Plaintiffs must allege the commission, the attempt, or conspiracy to commit a predicate act.  See Mendez Internet Mgmt. Sers., Inc. v. Banco Santander de Puerto Rico, 621 F.3d 10, 14 (1st Cir. 2010).  These acts constituting a predicate act are statutorily defined and listed in 18 U.S.C. § 1961(1).  Since 1995, when the PSLRA was passed and the RICO Act was amended, securities fraud is no longer a predicate act under Section 1961(1).  See Mathews v. Kidder, Peabody & Co., Inc., 161 F.3d 156, 164 (3d Cir. 1998); Ostler v. Codman Research Grp., Inc., CIV. 98-356-JD, 1999 WL 1059684, at * 6 (D.N.H. Apr. 20, 1999); 18 U.S.C. § 1964(c).  As these other courts have held, allegations of securities fraud no longer serve as predicate acts to civil RICO claims.  See 18 U.S.C. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.").

Plaintiffs argue the complaint does not allege violations involving the purchasing and selling of securities.  (See Docket No. 63 at 6.)  Rather, Plaintiffs claim the acts described in the complaint constitute bank fraud.  (See id.)  Bank fraud is a proper predicate act under the RICO Act to sustain an action.

In looking at the complaint, it is clear Plaintiffs are seeking compensation for losses suffered from the purchase and sale of securities.  Plaintiffs' damages estimate is based on the lost value of the securities they purchased and currently own.  All loans in this case were secured for the purchasing of securities.  All monies were used to purchase securities.  Plaintiffs argue the complaint alleges bank fraud violations prior to the purchase of the securities, rather than violations pursuant the purchasing and selling of securities.  Reading the complaint as a whole, the court disagrees.  This this action stems from the purchasing and selling of securities and is therefore preempted by PSLRA.  Disassociating the acts leading to the purchase and sale of securities and the acts of purchasing and selling securities is not appropriate in this case.  It is abundantly clear that all efforts were made and

**Civil No. 10-1906 (GAG)**                                        9

procedures followed for the goal of purchasing and selling securities.  The court finds Plaintiffs'

RICO Act claim to be preempted by the PSLRA.  Therefore, the court **GRANTS** Defendants'

motion to dismiss.

### IV.        Conclusion

For the reasons set forth above, the court **GRANTS** Defendants' motions to dismiss at

Docket Nos. 48, 49, 69, and 70.  The court **GRANTS in part** and **DENIES in part** the motion to

dismiss at Docket No. 68.  However, as the court has determined the complaint fails to state a claim

upon which relief may be granted as to Defendants, the court *sua sponte* dismisses Plaintiffs' claims

against Alvarez as well.  All claims against Defendants are hereby **DISMISSED**.


**SO ORDERED.**

In San Juan, Puerto Rico this 30th day of July, 2012.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge